UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

LARRY ALLEN CLUCHEY,                    Case No. 21-00524-jwb

                                        Chapter 7
                        Debtor.
_____/

WORLD ENERGY INNOVATIONS,
LLC, f/d/b/a WORTHINGTON ENERGY
INNOVATIONS, LLC,

                        Plaintiff,

        v.                              Adversary Proceeding No. 21-80053-jwb

LARRY ALLEN CLUCHEY,
SHERRY D. CLUCHEY,

                        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT LARRY ALLEN CLUCHEY'S MOTION TO DISMISS COUNT I,
COUNT II, COUNT III, COUNT IV, COUNT V, COUNT VI, AND COUNT VII OF THE
INSTANT ADVERSARY PROCEEDING
[RELATED TO DOC # 11]**

        Plaintiff, World Energy Innovations, LLC, formerly doing business as Worthington Energy

Innovations, LLC ("WEI"), by and through undersigned counsel, hereby submits the following

response in opposition to Defendant Larry Allen Cluchey's Motion to Dismiss Count I, Count II,

Count III, Count IV, Count V, Count VI, and Count VII of the Instant Adversary Proceeding (the

"Motion to Dismiss") as follows:

**Preliminary Statement**

        1.      The arguments made in the Motion to Dismiss ignore applicable precedent of the

United States Court of Appeals for the Sixth Circuit and should be summarily denied.  Determining

whether Plaintiff, WEI holds a nondischargeable claim against Mr. Cluchey ("Debtor") is a "two-step process"; the first step being a determination of the validity of the claim under state law, and the second step being the determination of nondischargeability under federal law. *Ohio Casualty Ins. Co. v. Hryhorchuk (In re Hryhorchuk)*, 211 B.R. 647, 650 (Bankr. W.D. Tenn. 1997) (citing *Grogan v. Garner*, 498 U.S. 279, 282, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991)). This adversary proceeding is the very type of action approved by the Sixth Circuit in *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993), which this Court followed in *State of Michigan v. Green (In re Green)*, 556 B.R. 853, 858 (Bankr. W.D. Mich. 2016) (Boyd, J.).

2.    WEI has already obtained a judgment against Debtor's wholly controlled and operated[1] business, American Research Products, Inc. ("ARP") for breach of contract and fraud in the amount of $1,938,150.27. *See* Complaint at 37-38, ¶¶ 154-156. Fundamentally, this nondischargeability action seeks to establish the Debtor's personal liability for his wrongful conduct. It also seeks to establish his and his spouse's joint liability for certain fraudulent, voidable and preferential transfers of ARP's money, which are germane to Debtor's chapter 7 case for two reasons. First, WEI also seeks to hold these resultant debts nondischargeable. And second, the claims asserted jointly against Debtor and Mrs. Cluchey form the basis for an objection to the exemption that Debtor has asserted in his residence at 7095 Mindew Drive SW, Byron Center, Michigan 49315, which he owns jointly as tenants by the entireties with Mrs. Cluchey, and on which there is no mortgage because he and his wife paid off the same largely with money taken from ARP that was paid to it by Plaintiff, WEI for the purpose of completing the contract, which

---

[1]  Technically, Dale Rueckert was originally involved and purchased common shares for $2,000, but Mr. Cluchey has made clear that Mr. Rueckert purchase no further shares, Mr. Rueckert lives and works in Wisconsin (where ARP does not have an office), and Mr. Rueckert has no role in the day-to-day management or operation of ARP, which was solely controlled, overseen and conducted by Mr. Cluchey in Michigan. *See* Complaint at 8-10, ¶ 35 (Dkt. No. 1), ECF Pages 8-10 of 66.

ARP, under Debtor's sole control, did not do (and resulted in the judgment against ARP).  *See* Exhibit FF [Doc. No. 1-31] to Complaint; Joint Claim (Claim No. 1, Case No. 21-00524-jwb). The Joint Claim and basis of claimed exemption are further discussed in Plaintiff, WEI's Response to the Motion to Dismiss filed by Mrs. Cluchey (Dkt. No. 18), which is incorporated by reference herein.

3.       In his Motion to Dismiss, Debtor incorrectly asserts that prepetition claims for money damages can never be adjudicated in an adversary proceeding and must be asserted only by way of a proof of claim.  The cases he cites do not concern nondischargeability actions and do not stand for the proposition that dismissal with prejudice is appropriate.  Debtor's assertions are simply incorrect, particularly in the context of a nondischargeability action.  The Sixth Circuit has expressly held to the contrary, ruling that a bankruptcy court has "jurisdiction to adjudge the validity and amount of a claim together with its dischargeability" and may enter a money judgment against a debtor upon determining nondischargeability.  *McLaren*, 3 F.3d at 965.

4.       Debtor's Motion to Dismiss makes no mention of *McLaren* or why it would not apply in this case, opting instead to cite out-of-circuit cases that are factually distinguishable from the Complaint and which do not concern cases regarding the dischargeability of debt.  This Court has jurisdiction—the applicable "authority"—to enter a money judgment on all of the claims asserted by WEI against Debtor in Counts I through VII, for which WEI seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(6), as set forth in Counts VIII and IX of the Complaint, Counts which Debtor has not moved to dismiss and has already answered. Accordingly, the Motion to Dismiss, which argues no other basis for dismissal, should be denied.

5.       A claim for personal liability on a debt sought to be held nondischargeable—to live on after bankruptcy—is not pursued by way of a proof of claim.  Instead, Rules 4007(a) and

7001(6) of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") confirm that this type of affirmative relief cannot be sought through the claims process, but must be sought by way of an adversary proceeding under Part VII of the Bankruptcy Rules.  An end goal of the Complaint is a nondischargeable judgment based on Debtor's personal liability.  Were the law as Debtor asserts, Plaintiff would have no ability to obtain a judgment for personal liability on the debt sought to be determined nondischargeable in this Court.  But that is not the law and Debtor's assertion is squarely contradicted by Sixth Circuit precedent.

6.      Debtor does not attempt to argue that Plaintiff, WEI has failed to state any of its claims in Counts I through VII.  In fact, he acknowledges the types of claims asserted within his Motion to Dismiss, listing them by each Count, and simply objects that they "are not actions brought pursuant to any section of the Bankruptcy Code" and are "pre-petition claims for monetary damages."  Mot. to Dismiss at 2-3, ¶¶ 3 and 4 (Dkt. No. 11-1).

7.      Instead, the Motion to Dismiss is an attempt to sidestep a determination of his personal liability by alleging, without any on-point support or addressing applicable Sixth Circuit precedent, that these claims can only be asserted by way of proof of claim against his estate.  Were this so, and the underlying claims could be dismissed with prejudice in exchange for only a proof of claim against an estate, then section 523(a)(2)(A) and (a)(6) would be rendered merely theoretical or very cumbersome.  As a practical matter, Debtor's personal liability has to be determined in conjunction with determining dischargeability, in the context of an adversary proceeding in accordance with Sixth Circuit precedent.

8.      Debtor also raises an argument (albeit not by way of motion, but instead in the "Introduction to Answer" in his (Corrected) Answer (Dkt. No. 14)) that Plaintiff should be required to state more clearly what has already been stated in the Complaint; not because Debtor could not

understand or respond to it, but apparently because he believes there is too much detail in the Complaint.  Yet at the same time, Debtor has already answered the Complaint with respect to Counts VIII, IX, and X, and he has admitted many of the allegations of the detailed Complaint, such that this issue has been waived under Rule 12(e) of the Federal Rules of Civil Procedure ("Civil Rules") and is moot.  Further, such an argument is not supported by any case law, was not properly raised by way of a motion, and therefore should not be entertained.

**Procedural History**

9.      Debtor filed his chapter 7 petition on March 2, 2021, and his case not been converted or dismissed.

10.     In his Schedule A/B (Dkt. No. 1), Debtor listed his residence, 7095 Mindew Drive SW, Byron Center, MI 49315, as jointly owned with his non-filing spouse, Sherry D. Cluchey, as tenants by the entireties, with a value of $250,000.00.  *See* Schedule A/B (Dkt. No. 1) at ECF Page 10 of 59.  He claimed that full value was exempt on Schedule C, and disclosed on Schedule D that it is unencumbered.  *See* Schedule C (Dkt. No. 1) at ECF Page 17 of 59; Schedule D (Dkt. No. 1) at ECF Page 21 of 59.

11.     On March 31, 2021, the Chapter 7 Trustee, Marcia R. Meoli (the "Trustee"), held the meeting of creditors, but adjourned it until April 28, 2021.  The Trustee has since adjourned the meeting several times and it is currently scheduled to be held on July 21, 2021, subject to further adjournment.  Accordingly, a party in interest can still timely file an objection to the tenancy-by-the-entireties exemption asserted by Debtor in his and Mrs. Cluchey's unencumbered residence pursuant to Rule 4003(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

12.     As alleged in the Complaint, Debtor subsequently disclosed at his initial meeting of creditors on March 31, 2021, that "he paid off the Second HELOC Mortgage [as defined in the Complaint] with his company's funds—funds of ARP—in May 2020, and subsequent to filing his Voluntary Petition Comerica Bank released the Second HELOC Mortgage."  Complaint at 35, ¶ 139 (Dkt. No. 1), ECG Page 35 of 66.

13.     On April 27, 2021, the Trustee filed a Joint Claims Notice (Dkt. No. 23) in Debtor's chapter 7 case, which set a deadline for creditors to file "joint claims" in order to receive distributions from "from the liquidation of real estate owned jointly by the Debtor and the Debtor's spouse (entireties property)."  *See* Joint Claims Notice, *In re Cluchey*, Case No. 21-00524-jwb (Bankr. W.D. Mich. April 27, 2021) (Boyd, J.), ECF No. 23.

14.     On May 14, 2021, Plaintiff, WEI filed its Complaint for Money Judgment, to Avoid and Recover Voidable Transactions and Determine Joint Debt, and to Determine Dischargeability of Debt (the "Complaint") (Dkt. No. 1).

15.     Also on May 14, 2021, WEI filed its Joint Claim (the "Joint Claim"), Claim No. 1 on the Court's claims register, which asserts joint claims against Debtor and Mrs. Cluchey of at least $73,617.43, plus additional, presently unknown amounts.   These joint claims are encompassed by the claims asserted in Counts IV, V, VI, and VII of the Complaint, as summarized in the prayer for relief.  *See* Complaint at 65, ¶ B (Dkt. No. 1), ECF Page 65 of 66.  A copy of the Complaint was attached to the Joint Claim.  And a copy of the Joint Claim, without the voluminous Complaint that was attached when filed, is attached to the Response to the Motion to Dismiss (Dkt. No. 18) filed by Mrs. Cluchey, which WEI is filing contemporaneously with this Response.

16.     On June 11, 2021, Debtor filed his Motion to Dismiss.

17.     That same day, Debtor also filed an Answer (the "Original Answer") [Doc. No. 12].
On June 14, 2021, Debtor filed a (Corrected) Answer (the "Corrected Answer") (Dkt. No. 14) and
a separate document titled "Defendant Larry Allen Cluchey's Affirmative Defenses" (the
"Affirmative Defenses Document") (Dkt. No. 15).  The Original Answer, Corrected Answer, and
Affirmative Defenses Document are collectively referred to herein as the "Answer."[2]

18.     On June 14, 2021, Debtor's non-filing spouse and Co-Defendant, Sherry D.
Cluchey, filed her Motion to Dismiss Count IV, Count V, Count VI, and Count VII (Dkt. No. 18).

19.     On June 17, 2021, at the Trustee's request, the Clerk of Court issued a Notice of
Possible Dividend to Creditors (Dkt. No. 32, Case No. 21-00524-jwb).  Plaintiff has until mid-
September to file a proof of claim, separate and apart from its Joint Claim, in response to that
Notice which was issued pursuant to Rule 3002(c)(5) of the Bankruptcy Rules.

### Background

20.     The Complaint recites the lengthy factual background to this adversary proceeding,
which WEI incorporates by reference herein without restating the same.  Although the factual
background is developed and detailed, and more than adequately supports the claims asserted in
Counts I through VII, the claims themselves are plainly stated.  Debtor had no issue with answering
the detailed factual background or clearly identifying such claims within his Motion to Dismiss.

21.     As set forth in the Complaint, WEI's claims originated from a contract entered into
with Debtor's wholly controlled and operated[3] alter ego business entity, ARP.  Complaint at 3,

---

[2]  The Original Answer included a recitation of affirmative defenses at the end.  It appears that the only difference
between the Original Answer and the Corrected Answer is that the Corrected Answer is signed and the affirmative
defenses were moved to the separate Affirmative Defenses Document.

[3]  Technically, Dale Rueckert was originally involved and purchased common shares for $2,000, but Mr. Cluchey
has made clear that Mr. Rueckert purchased no further shares, Mr. Rueckert lives and works in Wisconsin (where
ARP does not have an office), and Mr. Rueckert has no role in the day-to-day management or operation of ARP,
which was solely controlled, overseen and conducted by Mr. Cluchey in Michigan.  *See* Complaint at 8-10, ¶ 35 (Dkt.
No. 1), ECF Pages 8-10 of 66.

¶ 10 (Dkt. No. 1), ECF Page 3 of 66.  The contract that WEI entered into with ARP was for the design, manufacture, and engineering of high-pressure adiabatic humidification systems.  WEI agreed to purchase, and ARP agreed to manufacture and deliver, a total of ten (10) adiabatic humidifier systems for installation and use at the Memorial Sloan Kettering Cancer Center in New York, New York.  Complaint at 3, ¶ 11 (Dkt. No. 1), ECF Page 3 of 66.

22.    This is an action, in part, to establish the personal liability of Mr. Cluchey to WEI for the judgment that has already been entered against ARP, in favor of WEI, and to enter a money judgment against him based upon the fraud he perpetrated upon WEI and because ARP's corporate veil should be pierced because it is Mr. Cluchey's alter ego, which he has used to defraud WEI. Complaint at 3, ¶ 12 (Dkt. No. 1), ECF Page 3 of 66.  Further detailed factual background is set forth in the Complaint at 4 5, ¶¶ 13 19, as well as the Background and Facts section of the Complaint at 6 48, ¶¶ 23 189.

23.    With respect to ARP, WEI has already obtained a final judgment against ARP in Case No. 3:20-cv-01454-JZ (N.D. Ohio April 19, 2021) (defined as the District Court Action below), ECF No. 24 for the amount of $1,938,150.27, which is attached to the Complaint as Exhibit FF; however, WEI has no prospect of recovering these amounts except as against the Defendants herein given that Mr. Cluchey has retired, shut down ARP, and ARP has no assets. *See* Complaint at 42, 47 ¶¶ 168(s) and (t), 184.

24.    As it concerns Mr. and Mrs. Cluchey, this adversary proceeding is also an action, in part, to avoid and recover from them, as joint debts, certain fraudulent, voidable, and preferential transfers of ARP's money, much of which had been paid by WEI to ARP for the performance of ARP's obligations to WEI—to build certain adiabatic humidifier systems under the Contract (as defined in the Complaint)—a Purchase Order #18126-013052-020119 for a total purchase price of

$1,043,695.00.  *See* Complaint at 3, 5, and 16, ¶¶ 11, 20, and 63 (Dkt. No. 1), ECF Pages 3, 5, and 16 of 66.

25.     The fraudulent, voidable and preferential transfers at issue in Counts IV, V, VI, and VII are described in the Complaint, in several places.  *See* Complaint at 45, ¶¶ 172-174; at 48, ¶¶ 187-189; at 56-57, ¶ 218 (Count IV).  Further, WEI has expressly reserved the right to, and has put all parties on notice that it may, amend its Complaint to include any other transfers that ARP made, which may be identified through the course of discovery, including but not limited to any funds of ARP, or funds that should have been paid to ARP, that were used to pay prior mortgages on Mr. and Mrs. Cluchey's residence at 7095 Mindew Drive SW, Byron Center, Michigan 49315. *See* Complaint at 48, ¶ 189 (Dkt. No. 1).

26.     As is alleged in the Complaint and supported with a copy of the negotiable instrument by which the transfer was made, on May 15, 2020, Mr. Cluchey caused his wholly controlled business, ARP, to issue a check in the amount of $71,807.67 to Comerica Bank to pay off the entire balance due and owing on the only mortgage against his and Mrs. Cluchey's residence.  *See* Complaint at 31-35, ¶¶ 123-141 (Dkt. No. 1).  And he did this a mere two days after he repudiated the very contract with WEI under which WEI had paid ARP $96,320.78 only two and half weeks before (without returning any of those funds to WEI).  *See* Complaint at 4, ¶ 15.  This and other categories of transfers of ARP's assets as alleged in the Complaint (*see* pp. 35-37, 45, and 48) form the basis for the claims alleged in Counts IV through VII.  As to the Second HELOC Transfers[4] used to pay down and pay off the equity line of credit on their

---

[4]  As defined in the Complaint and incorporated by reference herein, the term "Second HELOC Transfers" means "an aggregate amount of $1,809.76 in minimum (i.e., interest) payments on the Second HELOC, plus the $71,807.67 payoff of the Second HELOC—a total of $73,617.43, which reduced their respective liability on the Second HELOC and increased their equity in 7095 Mindew."  The term "Second HELOC," in turn, is defined in the Complaint and incorporated by reference herein to mean "a second home equity line of credit with Comerica Bank [taken out on or

residence, and as to certain AmEx Transfers[5] used to pay personal expenses, the claims are asserted jointly against Mr. and Mrs. Cluchey, under the cited provisions of the Uniform Voidable Transactions Act—MCL 566.34(a)(1) (Count IV), MCL 566.34(1)(b) (Count V), MCL 566.35(1) (Count VI), and MCL 566.35(2) (Count VII). Mrs. Cluchey is named as a Defendant because she was a person and insider for whose benefit the transfers of ARP's assets—the Second HELOC Transfers and AmEx Transfers (along with any Transfers identified through the course of discovery)—were made.

27.    As Debtor has already admitted in his Answer to the Complaint, WEI's claim against him for personal liability was the sole reason for his bankruptcy case and WEI is, substantively, his only creditor, apart from a small number of very negligible claims. *See* Complaint at 39-44, ¶¶ 162-171 (Dkt. No. 1); (Corrected) Answer at 52-61, ¶¶ 162-171 (Dkt. No. 14) (admitting many of the allegations of the Complaint).

28.    Debtor has not argued that WEI failed to adequately allege the claims in Counts I through VII under applicable state law—the traditional use of Rule 12(b)(6)—so the statement of those claims has not been put at issue. Nonetheless, WEI will briefly summarize those claims, which WEI asserts have been more than adequately stated, for the Court's convenience as follows:

a)    Count I—Piercing the Corporate Veil (against Defendant, Mr. Cluchey): This claim is asserted under Ohio law and Michigan law, which both recognize piercing the corporate veil as an equitable doctrine. *See, e.g.*, *Belvedere Condominium Unit*

---

about August 12, 2019 by Mr. and Mrs. Cluchey], account number xxxxxxx1128, in the amount of $75,200.00, by executing a Credit Agreement and Disclosure Statement—Home Equity Line of Credit.

[5]   As defined in the Complaint and incorporated by reference herein, the term "AmEx Transfers" means "amounts to AmEx [American Express] on account of the ARP AmEx credit card account [a Business Gold Rewards credit card, account ending x-x1009, that Mr. Cluchey used on a day-to-day basis to pay both his business and personal expenses, including but not limited to meals, food, fuel, travel (lodging and air fare), and other purchases] and/or the Cluchey AmEx credit card [personal AmEx Gold Delta SkyMiles credit card, account ending x-x1001, for which certain charges were paid with ARP funds], which Mr. Cluchey used to pay personal expenses, including upon information and belief, certain of the personal, family, and household expenses of Mr. Cluchey and/or Mrs. Cluchey.

*Owners' Ass'n v. R.E. Roark Cos., Inc.* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1086 (1993); *Belleville v. Hanby*, 152 Mich. App. 548, 394 N.W.2d 412 (1986). Under either state's law, the allegations of the Complaint more than adequately allege a claim that ARP was a mere instrumentality of Debtor, which he used to commit a fraud or wrong, and that Plaintiff suffered an unjust loss. *See, e.g.*, *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007). *See* Complaint at 49-51, ¶¶ 190-197 (and the prior paragraphs restated therein).

b) <u>Count II—Fraud (against Defendant, Mr. Cluchey)</u>: This claim is asserted under both Ohio and Michigan common law. *See, e.g.*, *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555, 817 N.W.2d 562 (2012); *Groob v. KeyBank*, 2006-Ohio-1189, ¶ 47, 108 Ohio St.3d 348, 357, 843 N.E.2d 1170, 1178. The allegations of the Complaint are replete with material misrepresentations made by Debtor, which were false, which Debtor knew were false, which were made with the intention that Plaintiff would advance ARP more money, that Plaintiff acted in reliance upon Debtor's representations, and that Plaintiff thereby suffered an injury. *See* Complaint at 51-53, ¶¶ 198-204 (and the prior paragraphs restated therein). Notably, many of the facts support WEI's claims are not simply allegations; rather, they are based upon Debtor's under-oath deposition testimony in the prior District Court Action[6] that resulted in a judgment against ARP for more than $1.9 million.

c) <u>Count III—Fraudulent Inducement (against Defendant, Mr. Cluchey)</u>: This claim is asserted under Ohio and Michigan law. *See, e.g., McGrath v. Nationwide Health*

---

[6] On July 1, 2020, WEI, as Plaintiff, filed a Complaint against ARP and Mr. Cluchey in the United States District Court for the Northern District of Ohio, Western Division (the "<u>District Court</u>"), Case No. 3:20-cv-01454 (the "<u>District Court Action</u>").

*Ins. Co.*, 295 F.Supp.3d 796, 812-813 (S.D. Ohio 2018) (applying Ohio law to deny the defendant's summary judgment motion, noting the elements of a claim for fraudulent inducement are a false representation concerning a fact material to the transaction, knowledge of the falsity or utter disregard for its truthfulness, intent to induce reliance, justifiable reliance, and proximate injury); *Llewellyn-Jones v. Metro Property Group, LLC*, 22 F.Supp.3d 760, 778-79 (E.D. Mich. 2014) (applying Michigan law to the defendant's motion to dismiss a fraudulent inducement claim, finding that plaintiff adequately alleged the elements of the claim, and noting the elements of a claim for fraudulent inducement are material representation, which is false, with knowledge of its falsity or made recklessly, with intention to induce reliance, reliance, and resulting damages). *See* Complaint at 54-56, ¶¶ 205-216 (and the prior paragraphs restated therein). The Complaint more than sufficiently pleads this claim by alleging that Debtor intentionally misrepresented that he had already purchased equipment and material in anticipation that Plaintiff would award him the contract, for the purpose of "pressur[ing]" Plaintiff to do so; that Debtor intentionally misrepresented his capabilities to perform a contract of this size and type; that Debtor treated each "batch" of Units ordered by Plaintiff as a separate account receivable and intentionally misrepresented his intended uses for advance payments on each batch order; that Debtor made these statements with knowledge of their falsity and with intention to induce Plaintiff's reliance; that Plaintiff in fact reasonably relied upon Debtor's false statements; that the misrepresentations were material to Plaintiff; and that Plaintiff has been harmed as a result.

12

d) <u>Count IV—Violations of the Michigan Uniform Voidable Transactions Act—MCL</u>

<u>566.34(1)(a) (against Defendants, Mr. and Mrs. Cluchey)</u>:  This claim concerns

transfers made with the intent to hinder, delay, or defraud creditors.  The

subdivisions of MCL 566.34(2) "correspond to the historical badges of fraud,"

which "are circumstances so frequently attending fraudulent transfers that an

inference of fraud arises from them."  *Dillard v. Schlussel*, 308 Mich. App. 429,

449-450; 865 N.W.2d 648 (2014) (quotations and citation omitted).  The allegations

of the Complaint more than adequately allege the elements for this claim, e.g., the

Transfers[7] were to insiders of ARP, the Transfers were not disclosed to WEI, the

Transfers included a significant amount of ARP's assets, ARP did not receive

reasonably equivalent value for the Transfers, and ARP was insolvent at the time

each Transfer was made or was rendered insolvent thereby.  *See* Complaint at

56-57, ¶¶ 217-211 (and the prior paragraphs restated therein).

e) <u>Count V—Violations of the Michigan Uniform Voidable Transactions Act—MCL</u>

<u>566.34(1)(b) (against Defendants, Mr. and Mrs. Cluchey)</u>:  This claim concerns the

Transfers being made without receiving reasonably equivalent value in exchange

for the transfers while ARP (i) was engaged or was about to engage in a business

or a transaction for which the remaining assets of the debtor were unreasonably

small in relation to the business or transaction; or (ii) intended to incur, or believed

or reasonably should have believed that the debtor would incur, debts beyond the

debtor's ability to pay as they became due.  MCL 566.34(1)(b).  Claims under MCL

---

[7] As defined in the Complaint and incorporated by reference herein, the term "Transfers" is defined to mean items (a), (b), and (c) in paragraph 218—the Second HELOC Transfers, the AmEx Transfers, and the Honda Ridgeline Transfers (each defined term also being defined within the Complaint).

566.34(1)(b) can be asserted by creditors whose claims arose after the transfer or creditors, like WEI, whose claims arose before the transfer.  The allegations of the Complaint more than adequately allege and support the elements for this claim.  *See* Complaint at 58, ¶¶ 222-227 (and the prior paragraphs restated therein).

f)    <u>Count VI—Violations of the Michigan Uniform Voidable Transactions Act—MCL 566.35(1) (against Defendants, Mr. and Mrs. Cluchey)</u>:  This claim concerns the avoidance of transfers made without receiving a reasonably equivalent value in exchange for the transfers or while ARP was insolvent or that cause ARP to become insolvent as a result with respect to creditors, like WEI, whose claims arose prior to the transfers.  MCL 566.35(1).  MCL 566.35(1) differs from MCL 566.34(1)(b) in that MCL 566.35(1) requires a showing of "insolvency" at the time of the transfer, as that term is defined in MCL 566.32.  The allegations of the Complaint more than adequately allege and support the elements for this claim.  *See* Complaint at 59, ¶¶ 228-232 (and the prior paragraphs restated therein).

g)    <u>Count VII—Violations of the Michigan Uniform Voidable Transactions Act—MCL 566.35(2) (against Defendants, Mr. and Mrs. Cluchey)</u>:  This claim involves transfers voidable as to Mr. and Mrs. Cluchey as insider creditors of ARP who received payments for antecedent debts at times when ARP was insolvent and Mr. and Mrs. Cluchey had reasonable cause to believe that ARP was insolvent.  MCL 566.35(2).  The allegations of the Complaint more than adequately allege the elements for this claim.  *See* Complaint at 59-60, ¶¶ 233-239.

## Argument

### I.   Legal Standard Applicable to the Motion to Dismiss.

29.   It is worth noting what the Motion to Dismiss is not.  Nowhere in the Motion to Dismiss is there any allegation or argument that the Complaint fails to state the claims asserted therein, particularly with respect to Counts I, II, III, IV, V, VI, and VII, which are the Counts referenced in the Motion to Dismiss.[8]  Accordingly, Plaintiff, WEI will not restate all the ways in which those claims are more than adequately stated, because that is not the gravamen of the Motion to Dismiss.  Rather, the sole alleged basis of the Motion to Dismiss is that the Counts at issue, which seek to establish Debtor's nondischargeable personal liability, should only be asserted by way of a proof of claim against his estate—a procedural argument that is both incorrect and easily dispensed with.  To the contrary, both an adversary and proof of claim are appropriate.

30.   "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The court is required to "accept all factual allegations [in the complaint] as true" and to "construe all inferences from those allegations in favor of the plaintiff."  *Kravitz v. Summersett (In re Great Lakes Comnet, Inc.)*, 588 B.R. 1, 10 (Bankr. W.D. Mich. 2018) (citing *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016)).

---

[8]  Mr. Cluchey has not moved to dismiss, and has already answered, Counts VIII, IX, and X of the Complaint by which Plaintiff, WEI seeks a determination that the debts described in Counts I, II, III, IV, V, VI, and VII are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (Count VIII), are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) (Count IX), and determining that Mr. Cluchey should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4) (Count X).

31.     While styled as a motion under Rule 12(b)(6) of the Civil Rules, the Motion to Dismiss does not actually argue that the Complaint fails to state a claim—instead it argues that this Court lacks authority to rule on the Complaint.[9]  As this Court previously noted in *In re Ahlan Indus., Inc.*, the standard that applies to a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) varies depending on the type of jurisdictional "attack" raised:

> A "facial attack" on the court's jurisdiction under Rule 12(b)(1), which challenges "the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharmaceutical Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (when reviewing a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss"). By contrast, when a 12(b)(1) motion presents a "factual attack" on the court's jurisdiction, no presumption applies to the truthfulness of the factual allegations in the complaint and the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins.*, 922 F.2d at 325.

*In re Ahlan Indus., Inc.*, No. 20-80136, 2021 WL 2134654, at *5 (Bankr. W.D. Mich. May 25, 2021).

32.     Here, the Motion to Dismiss presents a facial attack on the Court's ability to enter a money judgment against Mr. Cluchey—it does not challenge the facts underlying the Court's authority.  Accordingly, the Court should accept the factual allegations in the Complaint as true for purposes of ruling on the Motion to Dismiss.

---

[9]  Beyond citation to the rule, Mr. Cluchey does not provide any substantive argument that Plaintiff failed to state its claims pursuant to Rule 12(b)(6).  Because the Motion to Dismiss fails to properly articulate cause for dismissal under Rule 12(b)(6), Plaintiff is not required to respond to, and the Court should not consider, an argument that the Complaint fails to state a claim.  *See McCracken v. Thor Motor Coach Inc.*, No. CV-15-00029-PHX-ROS, 2015 WL 13566918, at *3 (D. Ariz. Dec. 3, 2015) (declining to consider arguments not properly raised in motion to dismiss).  To the extent that Mr. Cluchey attempts to argue matters beyond the scope of the Motion to Dismiss in a reply or at hearing, Plaintiff expressly reserves the right to ask the Court to strike such argument or permit a surresponse to the same.

33.     The legal issue raised by the Motion to Dismiss is actually one of jurisdiction, not the failure to state a claim; Debtor, in fact, acknowledges and understands the claims asserted. *See* Mot. to Dismiss at 2-3, ¶¶ 6 and 7 ("Each of Counts I through VII allege a cause of action against Defendant Larry Allen Cluchey that arose pre-petition."). It is clear that the Motion to Dismiss (and the (Corrected) Answer) do not raise any issues with the sufficiency of the allegations of the Complaint for which a *Twombly* analysis is applicable; rather, Debtor has actually complained of the opposite—that Plaintiff pled its claims with too much particularity.

34.     Debtor focuses solely on Rule 7001 of the Bankruptcy Rules. *See* Mot. to Dismiss at 3-6, ¶¶ 8-15. This is a rule of procedure, not a statute or common law basis for a claim. It does not set forth any elements of a claim or establish a right of relief, it merely sets forth a non-exclusive list of categories of proceedings that should be brought by way of an adversary proceeding in bankruptcy court.[10]

## II.     The Motion to Dismiss Counts I through VII is Without Any Basis and Should Be Denied.

35.     In his Motion, Debtor asserts that Counts I through VII of the Complaint should be dismissed because (i) they seek only money damages against Debtor based upon his prepetition conduct and (ii) money damages claims do not fall within Rule 7001's "exclusive list" of actions that may be brought by adversary proceeding. These arguments are not supported by applicable Sixth Circuit case law, nor can they possibly apply within the context of a nondischargeability action.

36.     Counts VIII and IX of the Complaint assert nondischargeability claims under section 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. Accordingly, on its face, this adversary

---

[10] Debtor concedes that there is case law contrary to that which he relies upon. *See* Mot. to Dismiss at 4-5, ¶ 11 & n.1.

proceeding is, in part, a "proceeding to determine the dischargeability of a debt." Fed. R. Bankr. P. 7001(6).

37.    Proving the existence of a debt is a prerequisite to determining its nondischargeability, and both the Sixth Circuit and this Court have expressly stated a bankruptcy court may enter a money judgment against a debtor when determining nondischargeability of that debt. *In re McLaren*, 3 F.3d 958, 965 (6th Cir. 1993); *State of Michigan v. Green (In re Green)*, 556 B.R. 853, 858 (Bankr. W.D. Mich. 2016) (Boyd, J.) (noting that the court has "constitutional authority to enter a final money judgment in a dischargeability action") (citing *Hart v. Southern Heritage Bank (In re Hart)*, 564 F. App'x 773, 776 (6th Cir. 2014) (unpublished)); *see also Vande Ryt v. Peace (In re Peace)*, 546 B.R. 65, 69 (Bankr. S.D. Ohio 2015) (observing that the threshold issue when a prepetition claim is unliquidated is whether a debt exists, which bankruptcy courts in the Sixth Circuit possess jurisdiction to determine) (citing *McLaren*); *In re Hatch*, 465 B.R. 479, 482 (Bankr. W.D. Mich. 2012); *In re Russell*, 463 B.R. 464, 467 (Bankr. W.D. Mich. 2012); *In re Marks*, No. AP 14-80301, 2015 WL 471608, at *2 (Bankr. W.D. Mich. 2015). In fact, even since the Supreme Court of the United States' ruling in *Stern* (and before that ruling), "the vast majority of the courts to consider the issue have concluded that the bankruptcy courts have both subject matter jurisdiction and constitutional authority to liquidate such debts in the context of dischargeability actions." *Harvey v. Dambowsky (In re Dambowsky)*, 526 B.R. 590, 597 & 597 n.6 (Bankr. M.D.N.C. 2015) (citing *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 2615-18, 180 L.Ed.2d 475 (2011) (citing *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); and *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (*per curiam*)), and observing that such an additional plenary suit "would be a meaningless gesture") (additional citations omitted).

38.     Viewed in the proper framework, the Motion to Dismiss simply highlights that the Counts at issue do not "arise under" the Bankruptcy Code, but rather are "related to" or "arise in" a bankruptcy case.  They are nevertheless properly within this Court's jurisdiction and Part VII of the Bankruptcy Rules does not change this analysis.  Rule 7001 does not supplant 28 U.S.C. § 1334 and is not a basis for dismissal of claims.  *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 1378, 176 L.Ed.2d 158 (2010) (the Bankruptcy Rules are "procedural rules adopted by the Court for the orderly transaction of its business" that are "not jurisdictional") (citing *Kontrick v. Ryan*, 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)); 10 *Collier on Bankruptcy* ¶ 7001.07 (16th ed. 2016).  Moreover, these claims are properly asserted pursuant to Rules 4007 and 7001 of the Bankruptcy Rules within this nondischargeability proceeding, as they must be.

39.     As they relate to Debtor, Counts I through VII of the Complaint set forth debts that Plaintiff asserts are nondischargeable under Counts VIII and IX.  Accordingly, to the extent that any of those debts are declared nondischargeable, this Court has authority to enter a money judgment for same in this adversary proceeding, pursuant to *McLaren*, *Green*, and this Court's "related to" jurisdiction under 28 U.S.C. § 1334.  In fact, the same argument was made by the debtor, and was rejected by the Sixth Circuit, in *McLaren*.  *See* 3 F.3d at 965 (stating that "McLaren's final argument is that while there is authority in the Bankruptcy Code for the bankruptcy court to determine whether a debt is dischargeable under section 523, there is no authority for the court to render a money judgment thereon" but noting that "the bankruptcy court has jurisdiction to adjudge the validity and amount of a claim together with its dischargeability.").

40.     Debtor's argument that Plaintiff's claims should be adjudicated through the claims allowance process lacks merit.  Each of the cases cited by Debtor addresses prepetition claims that

19

creditors sought to litigate via adversary proceeding but could have been asserted solely by way of a proof of claim because no dischargeability determination had been sought. None of the case law cited in the Motion to Dismiss addresses the situation where a money damages judgment is sought in conjunction with a determination of the dischargeability of the debt—the exact situation addressed in the case law cited by Plaintiff herein. *See, e.g., Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011) (contempt proceeding under 11 U.S.C. § 524 are contested matters and not adversary proceedings); *In re Aegis Mortg. Corp.*, No. 07-11119 (BLS), 2008 WL 2150120, at *7 (Bankr. D. Del. May 22, 2008) (finding that the court lacked jurisdiction over third party homeowner's claim to rescind mortgage that debtors had transferred to a third-party prepetition because it would have no impact on their estates (while expressly recognizing that "there may be cases where an action against a non-debtor or a non-debtor's property may have an effect on a debtor's estate") and finding that related claim for money damages under the Truth in Lending Act and the Real Estate Settlement Procedures Act was an unsecured claim to be adjudicated through the claims allowance process and not by adversary proceeding); *In re Lernout & Hauspie Speech Prod., N.V.*, 264 B.R. 336, 340 (Bankr. D. Del. 2001) (subordination claim under 11 U.S.C. § 510(b) is not limited to allowed claims and thus is not an adversary proceeding under Bankruptcy Rule 7001(8)); *The DBL Liquidating Trust v. P.T. Tirtamas Majutama* (*In re Drexel Burnham Lambert Grp., Inc.*), 148 B.R. 993, 998 (S.D.N.Y. 1992) (finding contract claim not an adversary proceeding under Bankruptcy Rule 7001 where nondischargeability claim had previously been dismissed and not repleaded); *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (finding that court is not compelled to apply Bankruptcy Rule 7023 to "class proofs of claim" and that related civil RICO claims brought by adversary proceeding should be adjudicated through the proof of claim process); *In re Cir. City Stores, Inc.*, No. 08-35653-KRH,

2010 WL 120014, at *5 (Bankr. E.D. Va. Jan. 7, 2010), *as corrected* (Jan. 11, 2010) (money damages claims based on WARN Act violations should be adjudicated through the claims allowance process); *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 46 (Bankr. D.N.J. 1998) (creditors' claims based on failure to repay loan should be adjudicated via claims allowance process). Furthermore, none of the foregoing cases cited by Debtor stands for the proposition that Bankruptcy Rule 7001, a rule of procedure, is a basis to dismiss a claim with prejudice.

41.     Regardless, Debtor has not attacked the validity of the claims stated in Counts I through VII based upon the applicable provisions of state law and there is no basis alleged by Debtor to dismiss the claims under Rule 12(b)(6), nor to dismiss the claims with prejudice or to award any attorney's fees in this circumstance.

42.     A proof of claim only results in a distribution from estate assets; it results in neither a judgment nor in a determination of nondischargeability. As noted above, the Sixth Circuit has clearly held that this Court may enter a money damages judgment when determining dischargeability. And pursuant to Rules 4007(a) and 7001(6), a proceeding to determine dischargeability of debt may only be brought by adversary proceeding. Plaintiff cannot be awarded the affirmative relief it seeks by way of proof of claim, which would only serve to obtain Plaintiff a share of the distribution of estate assets, not a nondischargeable judgment. *See, e.g.,* Fed. R. Bank. P. 3007(b) (a claim objection may be included in an adversary proceeding, but a demand for relief under Rule 7001 cannot be included in an objection to the allowance of a claim). The relief Plaintiffs seek in Counts I through III is not payment from the estate; rather, it is a personal judgment against Debtor for the debts that Plaintiff seeks to have declared nondischargeable, which will live on outside of the bankruptcy case after it has concluded.

21

43.     Even if it were determined that another court, such as the United States District Court for the Northern District of Ohio (in which Counts I, II, and III for piercing the corporate veil, fraud, and fraudulent inducement claims were first asserted against Debtor in the District Court Action) should enter the judgment for Debtor's personal liability—an approach that would be inefficient at this point—the remedy in this Court would not be a dismissal with prejudice of those claims, but rather abstention or withdrawal of the reference for determination of the claims in another forum—a result not warranted by the circumstances of this case.  *See, e.g.*, *Cowan v. Ladosenszky (In re Ladosenszky)*, 617 B.R. 275, 277 (Bankr. E.D. Mich. 2020) ("Normally, in determining the dischargeability of a debt, the Court must adequately identify the debt at issue, and often this means that the Court must quantify the debt at issue."  But dismissing, without prejudice, or abstaining under 28 U.S.C. § 1334(c)(1), from determining the amount of debt owing under a judgment of divorce previously entered by the Wayne County, Michigan Circuit Court because "the State court in the divorce case can and should decide what the correct amount of the debt is.").  This adversary, however, does not concern domestic support obligations and a judgment has not been previously entered against Debtor.

44.     At the time the Complaint was filed, the Trustee had not solicited proofs of claim for general unsecured claims—she had only solicited joint claims (claims against both Mr. and Mrs. Cluchey) for the purpose of evaluating Debtor's tenancy-by-the-entireties exemption and potentially liquidating the property subject to the exemption.  *See* Joint Claims Notice (Dkt. No. 23, Case No. 21-00524-jwb).  As noted above, on May 14, 2021, Plaintiff filed its Joint Claim asserting the same joint claims against Mr. and Mrs. Cluchey described in certain Counts of the Complaint.  Neither Mr. nor Mrs. Cluchey has objected to the Joint Claim filed by Plaintiff.  Nor has a proof of claim yet been filed.  But even if contested matters arise with respect to the Joint

Claim or a future proof of claim, it will not divest this court of jurisdiction over this adversary proceeding—jurisdiction that the Sixth Circuit clearly has held this Court has (and this Court has previously acknowledged).  The Court will simply need to decide at that point how best to proceed, and efficiency commends that any such contested matter should be consolidated with this adversary proceeding for the purpose of efficient adjudication pursuant to Rule 42(a) of the Civil Rules, made applicable by Rule 7042 of the Bankruptcy Rules.  The fact that a claim objection may yet be filed in no way restricts the Court's authority to enter a judgment determining both money damages and nondischargeability under *McLaren*.

45.     Nondischargeability actions are inherently based upon prepetition conduct and claims.  If Debtor were correct that these can only be asserted by way of proof of claim, then no creditor could ever obtain a judgment for relief on such claims in bankruptcy court in conjunction with seeking a determination of the dischargeability of debt.  This is clearly not the law.  *See, e.g.*, *McLaren*, 3 F.3d at 965 (citing *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991) for the proposition that "empaneling a jury in bankruptcy court in the midst of a dischargeability proceeding, or referring the matter back to the district court for a jury trial 'creates a cumbersome process.' ").

46.     The Supreme Court of the United States has likewise recognized that a debtor's liability for fraudulent conveyances that impair a creditor's ability to collect a debt, which is a prepetition claim, can be held nondischargeable under section 523(a)(2)(A).  *See Husky Int'l Elecs., Inc. v. Ritz*, --- U.S. ----, 136 S. Ct. 1581, 194 L.Ed.2d 655 (2016); *see also Cohen v. de la Cruz*, 523 U.S. 213, 219, 118 S. Ct. 121, 140 L.Ed.2d 341 (1998).

47.     An adversary proceeding is precisely the procedure, and the most efficient and cost-effective procedure, by which to raise the claims asserted in WEI's Complaint against Debtor in

this Court.  The alternative would be to send the liability determination back to the United States District Court for the Northern District of Ohio; however, in this case, in which a judgment for Debtor's liability has not yet been entered, the liability determination would be difficult to unbundle from the dischargeability determination, and is an approach which seems neither efficient nor desirable for the ultimate administration of Debtor's bankruptcy.

### III. To the Extent Debtor's Answer Seeks Any Relief under Rule 12, That Relief Should Be Denied.

48.    Debtor's Answer is unusual in that it includes seven introductory paragraphs that essentially read like a motion for a more definite statement, yet were not included in his separately filed Motion to Dismiss.  The arguments made in these paragraphs can be fairly summarized as requesting that the Court require a more definite statement because the Complaint is *too detailed*.

49.    Much case law exists discussing the standards for dismissing complaints that fail to meet the notice pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), neither of which is at issue in this case.  Counsel, however, has not been able to find any cases requiring a more definite statement on the grounds that the Complaint is too detailed—that it asserts more than the minimum quantum of facts required by the Civil Rules and Bankruptcy Rules.

50.    Debtor does not assert that Plaintiff has failed to state valid claims.  Accordingly, Rule 12(b)(6) is not applicable.  Without attacking the merits of Complaint—many of the allegations of which Debtor has already admitted in his Answer—Debtor argues for dismissal based on a very strained reading of the Bankruptcy Rules.  Although the Complaint is lengthy, due mostly to the developed nature of the factual history, and to ensure its compliance with Rule 9 of the Civil Rules, the Counts that Plaintiff asserts against Debtor are plainly stated and certainly understandable (as evidenced by him already answering the same).

51.     Plaintiff asserts that its ability to plead its case with such particularity (and that Debtor has already answered and admitted many of those allegations) speaks to the strength of the claims asserted, not any deficiency in stating those claims.

52.     Accordingly, to the extent Debtor's Answer seeks a more definite statement, separate and apart from his Motion to Dismiss, that relief was not properly requested, has been waived, is moot, should not be entertained, and should be denied.

<u>**Conclusion**</u>

WHEREFORE, Plaintiff, WEI, respectfully requests that this Court deny the Motion to Dismiss in its entirety as lacking any basis in law and being asserted in direct contravention to the Sixth Circuit precedent, *McLaren* cited herein; and that this Court, if it should decide to entertain the request for a more definite statement asserted in the Answer, deny the same in its entirety as having not been properly asserted by way of motion, having been waived under Rule 12(e) of the Civil Rules, lacking any basis in law and the Civil Rules, and being moot by virtue of the Answer already filed by Debtor.

ICE MILLER LLP


Dated:  July 9, 2021                      /s/  Tyson A. Crist
                                          Tyson A. Crist
                                          John C. Cannizzaro
                                          250 West Street, Suite 700
                                          Columbus, OH  43215
                                          Phone:  (614) 462-2243
                                          Fax:  (614) 224-3266
                                          tyson.crist@icemiller.com
                                          john.cannizzaro@icemiller.com

                                          *Counsel for Plaintiff,*
                                          *World Energy Innovations, LLC,*
                                          *f/d/b/a Worthington Energy Innovations, LLC*

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT LARRY ALLEN CLUCHEY'S MOTION TO DISMISS COUNT I, COUNT II, COUNT III, COUNT IV, COUNT V, COUNT VI, AND COUNT VII OF THE INSTANT ADVERSARY PROCEEDING* was filed electronically with the Clerk using the Court's CM/ECF system, which sent notification of such filing to all counsel of record, at the following addresses:

- **Steven Mark Bylenga**   steve@cbhattorneys.com, nikki@chasebylenga.com, molly@cbhattorneys.com, teresa@chasebylenga.com, kelly@cbhattorneys.com, 1140866420@filings.docketbird.com, bylengasr74219@notify.bestcase.com, jo@cbhattorneys.com, jsw@cbhattorneys.com

- **Robert F. Wardrop**   bkfilings@wardroplaw.com, bkrfilings@wardroplaw.com, bkwalfilings@wardroplaw.com

And I hereby further certify that on July 9, 2021, copies of the foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT LARRY ALLEN CLUCHEY'S MOTION TO DISMISS COUNT I, COUNT II, COUNT III, COUNT IV, COUNT V, COUNT VI, AND COUNT VII OF THE INSTANT ADVERSARY PROCEEDING* were served by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

Larry Allen Cluchey
7095 Mindew Drive SW
Byron Center, MI 49315

Sherry D. Cluchey
7095 Mindew Drive SW
Byron Center, MI 49315

Office of the U.S. Trustee
The Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R
Grand Rapids, MI 49503

ICE MILLER LLP

Dated:  July 9, 2021

/s/  Tyson A. Crist
Tyson A. Crist
John C. Cannizzaro
250 West Street, Suite 700
Columbus, OH  43215
Phone:  (614) 462-2243
Fax:  (614) 224-3266
tyson.crist@icemiller.com
john.cannizzaro@icemiller.com

*Counsel for Plaintiff,*
*World Energy Innovations, LLC,*
*f/d/b/a Worthington Energy Innovations, LLC*

27